# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-10436-tmd** |
| **MARY BRENNA RYLEE,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | **(SUBCHAPTER V)** |

---

## DEBTOR'S PROPOSED SUBCHAPTER V PLAN OF REORGANIZATION

---

Dated: September 13, 2021

HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Tel: (512) 472-5456
Fax: (512) 479-1101

> Jameson J. Watts
> State Bar No. 24079552
> jameson.watts@huschblackwell.com
> Lynn Hamilton Butler
> State Bar No. 03527350
> lynn.Butler@huschblackwell.com

**COUNSEL FOR DEBTOR**
**MARY BRENNA RYLEE**

# TABLE OF CONTENTS

**Page**

ARTICLE I SUBCHAPTER V REQUIRED DISCLOSURES ...................................................1

  1.1 Nature of Debtor's Business and Brief History of the Debtor's Operations ................... 1

  1.2 Historical Information Regarding Events Leading to the Bankruptcy Case.................... 1

  1.3 Ability to Fund Plan.......................................................................................... 2

  1.4 Ability to Make Future Plan Payments and Operate Without Further Reorganization .... 3

  1.5 Liquidation Analysis ......................................................................................... 3

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS............................................4

  2.1 The following is a designation of the Classes of Claims and Interests pursuant to this Plan ................................................................................................................. 4

  2.2 Claims and Interests .......................................................................................... 4

ARTICLE III TREATMENT OF ADMINISTRATIVE EXPENSES AND CERTAIN PRIORITY CLAIMS .........................................................................................4

  3.1 Administrative Expenses .................................................................................... 4

  3.2 Tax Claims ...................................................................................................... 6

  3.3 Governmental Bar Date ..................................................................................... 6

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS .................................................6

  4.1 Class 1 – Tax Claims ......................................................................................... 6

  4.2 Class 2 – Secured Claims.................................................................................... 7

  4.3 Class 3 – General Unsecured Claims..................................................................... 7

  4.4 Class 4 – Contingent Flex 24 Unsecured Claims..................................................... 7

  4.5 Class 5 – Contingent FLX Unsecured Claims ........................................................ 7

  4.6 Class 6 – Interest Holders .................................................................................. 8

ARTICLE V ACCEPTANCE OR REJECTION OF PLAN ......................................................8

  5.1 Classes Entitled to Vote ..................................................................................... 8

  5.2 Class Acceptance Requirement............................................................................ 8

  5.3 Elimination of Vacant Classes ............................................................................ 8

  5.4 Request Pursuant to Section 1191(b) .................................................................... 8

ARTICLE VI MEANS OF IMPLEMENTATION OF THE PLAN ............................................8

  6.1 Transfer of Assets ............................................................................................ 8

  6.2 Assumption of Obligation to Make Distributions.................................................... 9

  6.3 Actions by the Debtor and the Reorganized Debtor to Implement Plan......................... 9

6.4 Continued Existence of the Debtor ................................................................................9

6.5 Management of the Reorganized Debtor ........................................................................9

6.6 Source of Funding for Operations and Plan Obligations .................................................9

6.7 Post-Effective Date Service List ....................................................................................9

6.8 Section 505 Powers .......................................................................................................9

6.9 Section 510(c) Powers .................................................................................................10

6.10 Section 506(c) Powers ................................................................................................10

6.11 Plan Injunction ...........................................................................................................10

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTION .............................................10

7.1 Distributions ...............................................................................................................10

7.2 Timing and Amount of Distributions ...........................................................................10

7.3 Means of Cash Payment ..............................................................................................10

7.4 Record Date for Distributions ......................................................................................10

7.5 Delivery of Distributions .............................................................................................10

7.6 W-9 Forms .................................................................................................................11

7.7 Time Bar to Cash Payments .........................................................................................11

7.8 Cure Period ................................................................................................................11

7.9 Distributions After Substantial Consummation .............................................................11

7.10 No Penalty for Prepayments ........................................................................................11

ARTICLE VIII RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES .................12

8.1 Retention of Estate Claims ..........................................................................................12

8.2 Retention of Estate Defenses .......................................................................................12

8.3 Assertion of Estate Claims and Estate Defenses ...........................................................12

ARTICLE IX PROCEDURES FOR RESOLVING AND TREATING CONTESTED
    CLAIMS ..................................................................................................................13

9.1 Claims Listed in Schedules as Disputed .......................................................................13

9.2 Responsibility for Objecting to Claims and Settlement of Claims ..................................13

9.3 Objection Deadline .....................................................................................................13

9.4 Response to Claim Objection .......................................................................................13

9.5 Distributions on Account of Contested Claims ..............................................................14

9.6 No Waiver of Right to Object .......................................................................................14

9.7 Offsets and Defenses ..................................................................................................14

9.8 Claims Paid or Reduced Prior to Effective Date ............................................................14

ARTICLE X EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................14

10.1 Assumption and Rejection of Executory Contracts ....................................................... 14

10.2 Cure Claim Payments .................................................................................................... 14

10.3 Bar to Rejection Claims ................................................................................................ 15

10.4 Rejection Claims ........................................................................................................... 15

10.5 Reservation of Rights .................................................................................................... 15

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS
OF PLAN .................................................................................................................15

11.1 Conditions to Confirmation and Effectiveness of Plan ................................................. 15

11.2 Notice of the Effective Date ......................................................................................... 15

ARTICLE XII EFFECT OF THE CONFIRMATION OF THE PLAN ....................................16

12.1 Compromise and Settlement ......................................................................................... 16

12.2 Discharge ...................................................................................................................... 16

12.3 PLAN INJUNCTION .................................................................................................. 16

12.4 Set-offs ......................................................................................................................... 17

12.5 Recoupment .................................................................................................................. 17

12.6 Turnover ....................................................................................................................... 18

12.7 Automatic Stay ............................................................................................................. 18

ARTICLE XIII JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN .....18

13.1 Retention of Jurisdiction .............................................................................................. 18

13.2 Abstention and Other Courts ........................................................................................ 19

13.3 Non-Material Modifications .......................................................................................... 19

13.4 Material Modifications .................................................................................................. 19

ARTICLE XIV MISCELLANEOUS PROVISIONS ..............................................................20

14.1 Severability ................................................................................................................... 20

14.2 Oral Agreements; Modification of Plan; Oral Representations or Inducements ............ 20

14.3 Waiver .......................................................................................................................... 20

14.4 Notice ........................................................................................................................... 20

14.5 Compliance with All Applicable Laws .......................................................................... 21

14.6 Duties to Creditors ....................................................................................................... 21

14.7 Binding Effect ............................................................................................................... 21

14.8 Governing Law, Interpretation...................................................................................... 21

14.9 Filing of Additional Documents ................................................................................... 21

14.10    Computation of Time ............................................................................................. 21

14.11    Elections by the Reorganized Debtor ..................................................................... 21

14.12    Release of Liens ................................................................................................ 21

14.13    Rates.................................................................................................................. 22

14.14    Compliance with Tax Requirements.................................................................. 22

**EXHIBITS**

EXHIBIT A - Definitions and Rules of Construction........................................................ 23

EXHIBIT B - Cash on hand on the Effective Date .......................................................... 31

EXHIBIT C - Income Projections .................................................................................... 32

EXHIBIT D - Liquidation Analysis ................................................................................. 33

# ARTICLE I
## SUBCHAPTER V REQUIRED DISCLOSURES

This proposed Subchapter V Plan of Reorganization dated September 13, 2021 (the "<u>Plan</u>")[1] is for an individual debtor, Mary Brenna Rylee (the "<u>Debtor</u>"), who owns and operates two businesses located in Odessa, Texas with her non-filing spouse, Michael G. Rylee (the "<u>Spouse</u>").  Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes: (A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization.

    1.1    <u>Nature of Debtor's Business and Brief History of the Debtor's Operations</u>.

On or about September 8, 2009, the Debtor and her Spouse opened a fitness facility—a d/b/a called Flex 24 at the time—and purchased the real property located at 226 E. University Boulevard, Odessa, TX 79762 (the "<u>Flex 24 University Property</u>").  The Flex 24 University Property was purchased and is still owned by "Michael G. Rylee and Mary Brenna Rylee dba Flex 24."  On or about September 24, 2012, the Debtor and her Spouse formed Flex 24 Fitness, L.L.C., a Texas limited liability company ("<u>Flex 24</u>").  On or about December 23, 2015, Flex 24 purchased the real property for a second location at 4101 E. 42nd Street, Suite O, Odessa, TX 79762 (the "<u>Flex 24 42nd St. Property</u>"), which has a mortgage on it with American Momentum Bank ("<u>AMB</u>") with an approximate unpaid balance of $1,604,760.99 (the "<u>Flex 24 Mortgage</u>").  The Debtor and her Spouse have continued to operate the University Blvd. and 42nd St. locations since they were purchased.  The Flex 24 facilities are open 24 hours a day, 7 days a week, offering access to fitness equipment, personal training, group training, and a kids' club.

On or about May 29, 2014, the Debtor and her Spouse formed FLX Energy Services, L.L.C., a Texas limited liability company ("<u>FLX</u>").  FLX is an oilfield service provider of non-destructive testing ("<u>NDT</u>").  FLX has a fleet of mobile test units capable of remote testing.  NDT services include ultrasonic testing, liquid penetrant, magnetic particular inspection, and hydrostatic testing.  On or about December 13, 2017, FLX purchased the real property located at 12406 W. County Road 100, Midland, TX 79706 (the "<u>FLX Property</u>"), which has a mortgage on it with AMB with an approximate unpaid balance of $987,882.29 (the "<u>FLX Mortgage</u>").  The FLX Property is FLX's primary location for servicing the Permian Basin, but FLX also has offices in Austin, TX and Floresville, TX.  Historically, FLX operated two divisions other than NDT, both of which have ceased operations: (i) rentals of temporary housing and other related equipment ("<u>Rentals</u>"); and (ii) oilfield downhole services ("<u>DHS</u>").

    1.2    <u>Historical Information Regarding Events Leading to the Bankruptcy Case</u>.

On or about February 23, 2017, FLX obtained a second loan from AMB in the principal amount of $150,000.00 (the "<u>FLX Revolver</u>"), which matured on September 15, 2020 and has an approximate unpaid balance of $1,022,152.75.  The Flex 24 Mortgage, the FLX Mortgage, and the FLX Revolver are collectively, the "<u>AMB Loans</u>."  On or about November 7, 2019, the

---

[1] Terms not otherwise defined in this Plan are defined and provided in **Exhibit A** attached hereto.

Debtor and her Spouse moved to Austin, TX and purchased their homestead located at 8308 Calera Drive, Austin, TX 78735 (the "Homestead"), which has a mortgage on it with SouthStar Bank ("SouthStar") with an approximate unpaid balance of $1,898,919.41 (the "SouthStar Mortgage"). On or about April 29, 2020, the Debtor filed for divorce in the case styled *In the Matter of the Marriage of Mary Brenna Rylee and Michael Gene Rylee*, Case No. D-1-FM-20-002371 (the "Divorce Case") in the 353rd Judicial District Court of Travis County, Texas (the "Divorce Court").

At the same time the Divorce Case was filed, the Covid-19 pandemic intensified and had significant impacts to the business operations of Flex 24 and FLX. Specifically, Flex 24's membership has decreased by 55% from 2,000 members in Q1 2019 to 880 members in Q2 2021. This decrease is the result of mandatory closures for non-essential businesses coupled with customers' hesitation to return to their gym in the midst of an ongoing pandemic. In addition, the price of oil dropped significantly due to the pandemic, which directly reduced the population of Odessa and its residents' disposable income for nonessential services like a gym membership. The drop in oil prices also negatively impacted FLX's revenue and resulted in the closure and liquidation of FLX's Rentals and DHS divisions.

During the pendency of the Divorce Case, the Debtor and her Spouse fell behind on the payments for the SouthStar Mortgage and AMB Loans. Consequently, SouthStar and AMB posted the Homestead, the Flex 24 42nd St. Property, and the FLX Property for foreclosure on June 1, 2021. The Debtor filed this Bankruptcy Case to halt the foreclosure of the Homestead, and AMB voluntarily pulled down the foreclosures of the Flex 24 42nd St. Property and the FLX Property. Since the filing of this Bankruptcy Case, the Debtor and her Spouse have paid all accrued principal and interest due on the AMB Loans. *See* Dkt. No. 76.

In this Plan, the Debtor proposes to pay all Allowed Claims in full and to renew and reinstate the AMB Loans for Flex 24 and FLX so they are back on good terms with AMB. The Debtor believes that the terms of this Plan will maximize distributions to her creditors and will allow the Debtor to emerge from bankruptcy having paid off all of her outstanding obligations in full.

The Debtor seeks confirmation under Section 1191(a) of the Bankruptcy Code. The Plan provides for liquidation of certain assets that will completely satisfy of all of the Debtor's Allowed Claims in full. The Plan is fair and equitable because all classes of creditors will be paid in full and will receive the same or more through the Plan than they would if the Debtor's assets were liquidated.

1.3    Ability to Fund Plan.

The Debtor intends to confirm a consensual plan under Section 1191(a) of the Bankruptcy Code. The Debtor and her Spouse will be selling the Homestead pursuant to the Settlement Agreement and Release with her Spouse with respect to the division of their community property in the Divorce Case (the "Settlement Agreement"),[2] which will provide

---

[2] The Debtor and her Spouse have reached an agreement in principle with respect to the division of their community property, which includes preparation and execution of the written Settlement

enough cash shortly after the Effective Date of the Plan to pay all Allowed Claims in full.  The Debtor will also utilize her 2019 tax refund of $112,500.00 and her 2020 tax refund, current value unknown, to fund the Plan if those funds arrive prior to the sale of the Homestead.  Tables showing the projected cash available to the Debtor, and the sources of that cash, are attached hereto as **Exhibit B.**

    1.4    <u>Ability to Make Future Plan Payments and Operate Without Further Reorganization</u>.

In the event the Debtor is unable to confirm a consensual plan under Section 1191(a) of the Bankruptcy Code, the Debtor must submit all or such portion of her future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan if the non-consensual plan is confirmed under Section 1191(b) of the Bankruptcy Code.

The Debtor has provided projected financial information in the event of a non-consensual plan under Section 1191(b) of the Bankruptcy Code.  Those projections are listed in **Exhibit C**.

The financial projections for Flex 24, which will be the Debtor's only source of income, show that the Debtor will have an average annual income, after paying operating expenses and post-confirmation taxes of approximately $162,103.18, which do not contain deductions for reasonable living expenses and personal income taxes. The Plan payments, if confirmed under Section 1191(b) of the Bankruptcy Code, will be the Debtor's Disposable Income after deducting reasonable living expenses and personal income taxes, and are expected to be paid over a sixty-month period.  However, the Debtor reserves the right to prepay any obligation under the Plan without penalty.

    **You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

    1.5    <u>Liquidation Analysis</u>.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. The Liquidation Analysis sets forth an estimated range of recovery values for each Class upon disposition of assets pursuant to a hypothetical Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit D** (together, Exhibits A, B, C, and D are part of the Plan Documents).

The liquidation analysis shows that holders of an impaired Claim or Equity Interest will receive more value under the Plan than the value such holder would receive or retain if the

---

Agreement.  As of the date of this Plan, counsel for the Debtor and her Spouse have not yet finalized the terms of the Settlement Agreement but expect to do so shortly after the filing of this Plan.  The Debtor and her Spouse will file a separate motion to approve their compromise and settlement under Rule 9019(a) of the Bankruptcy Rules.  Approval and implementation of the Settlement Agreement are necessary for the Debtor to effectuate the terms of this Plan.

Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date because all Allowed Claims will be paid in full under the Plan.  The liquidation analysis satisfies § 1129(7).

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     The following is a designation of the Classes of Claims and Interests pursuant to this Plan.  Administrative Expenses and Priority Claims, other than Tax Claims and Secured Claim of SouthStar, have not been classified, and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  A Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim within that Class.

2.2     Claims and Interests. Allowed Claims and Interests against or in the Debtor are classified under this Plan as follows:

(a)     Class 1 – Tax Claims

(b)     Class 2 – Secured Claims

(c)     Class 3 – General Unsecured Claims

(d)     Class 4 – Contingent Flex 24 Unsecured Claims

(e)     Class 5 – Contingent FLX Unsecured Claims

(f)     Class 6 – Interest Holders

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSES
## AND CERTAIN PRIORITY CLAIMS

3.1     Administrative Expenses.

(a)     The Debtor will pay in full, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this Section 3.1 will not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article IX below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Bankruptcy Case.

(b)     A Subchapter V Trustee ("Trustee") was appointed in this case. The Trustee's interim final compensation will be in full within fourteen (14) days of the closing on the sale of the Debtor's Homestead, which is expected to occur on or before

March 31, 2022, or upon approval of the Trustee's final fee application, whichever is later.

(c)     Subchapter V bankruptcy cases do not require the payment of quarterly fees to the United States Trustee, as ordinarily required under 28 U.S.C. § 1930(a)(6)(A). As such, there will be no quarterly payments, or any payments whatsoever, to the United States Trustee.

(d)     Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), will receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment within fourteen (14) days of the closing on the sale of the Debtor's Homestead, which is expected to occur on or before March 31, 2022, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(e)     Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, will file with the Bankruptcy Court and serve upon the Reorganized Debtor and her counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the Administrative Bar Date.  Such notice will include at a minimum: (i) the name, address, telephone number, fax number (if applicable), and email address of the holder of such Claim; (ii) the amount of such Claim; and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by or on the Administrative Bar Date will result in such Claim for an Administrative Expense being forever barred from receiving any Distribution.

(f)     A Claim for an Administrative Expense, for which a proper notice was filed and served under Subsection 4.1(e) above, will become an Allowed Administrative Expense if no Objection is filed within twenty-one (21) days of the filing and service of such notice.  If a timely Objection is filed, the Claim will become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(g)     The procedures contained in Subsections 3.1(a), (e) and (f) above will not apply to Administrative Expense Claims asserted by Estate Professionals, who will each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.   A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served will become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, will be paid in accordance with Subsection 3.1(d) above. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

(h)     If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for an Administrative Expense, the Administrative Expense Claim will be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court will have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.2     <u>Tax Claims</u>. Pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, each holder of an Allowed Tax Claim shall receive priority and be paid a value, as of the Effective Date, equal to the unpaid portion of such Allowed Tax Claim within fourteen (14) days of the closing on the sale of the Debtor's Homestead, which is expected to occur on or before March 31, 2022.

3.3     <u>Governmental Bar Date</u>. The Governmental Bar Date will apply to all Claims by a Governmental Unit which are not Administrative Claims.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS**

Claims and Interests are classified by priority or type.  The treatment described below will apply to all Claims or Interests of the given Class against the Debtor.  Except as specifically provided below, Holders of Allowed Claims or Interests against the Debtor will be entitled to distributions (or other treatment as described below) only from the Property of the Estate of the Debtor.

4.1     <u>Class 1 – Tax Claims</u>

(a)     Each holder of an Allowed Tax Claim will retain all Liens securing the payment of such Allowed Tax Claim, along with their senior priority pursuant to Texas and/or Federal Law, until such Allowed Tax Claim is paid in full, notwithstanding the provisions of any exit financing or any other order entered in this case.  Each holder of an Allowed Tax Claim will be paid in full.

(b)     Each holder of an Allowed Tax Claim will be paid in full within fourteen (14) days of the closing on the sale of the Debtor's Homestead, which is expected to occur on or before March 31, 2022, or, in the case of year 2021 ad valorem property taxes, in the ordinary course of business prior to the state law delinquency date.

(c)     Interest on each Allowed Tax Claim will accrue from the Petition Date through the Effective Date and from the Effective Date through the date of payment in full at the state statutory rate of interest pursuant to Sections 506(b), 511, and 1129 of the Bankruptcy Code.

(d)     In the event of a default in the payment of an Allowed Tax Claim, the tax authority shall be entitled to pursue its non-bankruptcy remedies in state or federal court without further orders of this Court.  The Debtor's/Reorganized Debtor's rights and defenses under Texas and Federal Law and the Bankruptcy Code, including her right to dispute or object to the tax authorities' claims, are fully preserved.  Notwithstanding any provision in the Plan or this Order to the contrary, the holder of Class 1 claim may amend

their proof of claim once the amount of the current year (year 2021) ad valorem taxes are actually assessed without further agreement with the Reorganized Debtor or leave of Court for approval to amend its claim.

4.2     Class 2 – Secured Claims

The Debtor believes there is only one Secured Claim that is not otherwise a Class 1 Tax Claim.  The Secured Claim of SouthStar will be paid in full, with interest accruing at the non-default contract rate, upon and at the closing of the sale of the Homestead, which is expected to occur on or before March 31, 2022.  Post-Effective Date monthly payments will be paid fifty-three percent (53%) from the Debtor's income and forty-seven percent (47%) from the Spouse up to the time of the sale of the Homestead.  SouthStar will retain all Liens securing the payment of such Allowed Claim until such Allowed Claim is paid in full.  The Debtor reserves the right to prepay the Secured Claim of SouthStar without penalty.

4.3     Class 3 – General Unsecured Claims

General Unsecured Claims, to the extent Allowed, will be paid in full, with interest accruing at the non-default contract rate, within fourteen (14) days of the closing on the sale of the Debtor's Homestead, which is expected to occur on or before March 31, 2022.

4.4     Class 4 – Contingent Flex 24 Unsecured Claims

The Debtor believes there is one existing Contingent Flex 24 Unsecured Claim, which is a portion of the AMB Loans, Claim No. 7, for the guaranty the Debtor provided to AMB for the Flex 24 Mortgage.  The Debtor will execute a renewal and/or modification of the Flex 24 Mortgage and its guaranty pursuant to the terms of the Settlement Agreement. AMB will retain its Lien on the Flex 24 42nd Street Location and the Debtor will pledge the Flex 24 University Location as additional collateral for the Flex 24 Mortgage.  AMB will not receive a payment under this Plan.  In the event of a default in the payment of the Flex 24 Mortgage post-Effective Date, AMB shall be entitled to pursue its non-bankruptcy remedies in state or federal court without further orders of this Court.  The Debtor's/Reorganized Debtor's rights and defenses under Texas and Federal Law and the Bankruptcy Code are fully preserved.

4.5     Class 5 – Contingent FLX Unsecured Claims

The Debtor believes there are two existing Contingent FLX Unsecured Claims, which are alleged liabilities of the Debtor based on her prior membership interest in FLX.  The first claim is a portion of the AMB Loans, Claim No. 7, for the guarantees the Debtor provided to AMB for the FLX Revolver (Loan No. XXX3416) and the FLX Mortgage (Loan No. XXX3411).  The second claim is for GTG Solutions, Inc. ("GTG"), Claim No. 9, for the pending litigation styled *FLX Energy Services, LLC v. GTG Solutions, Inc. v. Michael and Mary Rylee, Third Party Defendants*, Cause No. DC18-17458 in the 109th Judicial District Court of Winkler County, Texas (the "GTG Lawsuit"), which is a dispute between FLX and GTG wherein GTG alleges FLX owes $92,223.64 in unpaid invoices.  The Contingent FLX Unsecured Claims will not receive a payment under the

Plan.  The Debtor and her spouse are conveying the Flex 24 University Property to Flex 24 and pledging it as additional collateral for the Flex 24 Mortgage in exchange for a release of the Debtor's guarantees of the FLX Revolver and FLX Mortgage.  In addition, the Debtor is contributing $75,000.00 that is being matched by her Spouse, for a total of $150,000.00, to fund the attorneys' fees, costs, and possible settlement of the GTG Lawsuit.  The Spouse and FLX will have sole authority to settle and the obligation to defend the GTG Lawsuit.  To the extent the $150,000.00 is insufficient to satisfy a judgment or settlement, FLX and/or the Spouse are solely responsible for satisfaction of the judgment or settlement obtained by GTG in the GTG Lawsuit.

4.6     Class 6 – Interest Holders

The Debtor will initially retain such Interests following the Effective Date.  However, holders of such Interest are not expected to receive any dividend from Flex 24's operating income, except reasonable salary, until such time as all Allowed Claims are paid in full pursuant to the terms of the Plan.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF PLAN**

5.1     Classes Entitled to Vote.  Each impaired Class of Claims entitled to vote shall separately vote to accept or reject the Plan with a Ballot.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.

5.2     Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.3     Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

5.4     Request Pursuant to Section 1191(b).  This section shall constitute the request by the Plan proponent, pursuant to section 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of section 1129(a)(8) (a)(10) or (a)(15) of the Bankruptcy Code may not be met.

**ARTICLE VI**
**MEANS OF IMPLEMENTATION OF THE PLAN**

6.1     Transfer of Assets.  As of the Effective Date, all Assets of the Debtor will be vested in the Reorganized Debtor.  The Assets will be vested in the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests, and charges, except as expressly provided in this Plan.

6.2     Assumption of Obligation to Make Distributions. The Reorganized Debtor will be deemed to have assumed the obligation to make the Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

6.3     Actions by the Debtor and the Reorganized Debtor to Implement Plan. The entry of the Confirmation Order will constitute all necessary authorization for the Debtor and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement, or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken will be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule or regulation.

6.4     Continued Existence of the Debtor. Except as otherwise provided herein, the Debtor will continue to exist, as the Reorganized Debtor, after the Effective Date, with all powers available to such person or legal entity, as applicable, in accordance with applicable law and pursuant to constituent documents. Upon the Effective Date, the Reorganized Debtor may, within her sole and exclusive discretion, take such action as permitted by applicable law and constituent documents as she determines is reasonable and appropriate.

6.5     Management of the Reorganized Debtor. From and after the Effective Date, the Reorganized Debtor will be managed in accordance with applicable law. The implementation and management of the Reorganized Debtor will initially be by the Debtor, Mary Brenna Rylee.

6.6     Source of Funding for Operations and Plan Obligations. The obligations under the Plan will be funded by the sale of the Debtor's Homestead and the 2019 and 2020 tax returns, or, alternatively, by operation of the Reorganized Debtor's business, Flex 24. However, it is anticipated that the net sale proceeds received by the Debtor from the sale of her Homestead will be the primary source of funding of the Plan Obligations. Specifically, the Homestead was valued at $3,500,000.00 in a May 2021 appraisal. The SouthStar Mortgage on the property is approximately $1,898,919.41, which results in approximately $1.6 million in equity. The Settlement Agreement provides for the Debtor to receive 53% of the net sale proceeds from the sale of the Homestead, which will be more than sufficient to fund the Plan. In addition, the Debtor will receive $112,500.00 for her 2019 tax refund and is expecting a similar refund for her 2020 tax return. These tax refunds will be utilized to fund the Plan Obligations to the extent they are received prior to the sale of the Debtor's Homestead.

6.7     Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date will be served on the following Persons (collectively the "Service List"): (i) any Person directly affected by the relief sought in the pleading, (ii) the U.S. Trustee, (iii) parties which have filed a Notice of Appearance in this Bankruptcy Case, (iv) the Subchapter V Trustee, and (v) the Reorganized Debtor through her legal counsel in this Bankruptcy Case.

6.8     Section 505 Powers. All rights and powers pursuant to Section 505 of the Bankruptcy Code are hereby reserved to the Estate and will be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

6.9     Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of equitable subordination or are hereby reserved to the Estate and will be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as Estate Defenses.

6.10    Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to Section 506(c) of the Bankruptcy Code, and all such rights will be specifically transferred to, and vested in, the Reorganized Debtor.

6.11    Plan Injunction. The Reorganized Debtor will have full power, standing, and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTION

7.1     Distributions. All Distributions to be made under this Plan will be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

7.2     Timing and Amount of Distributions. No Distribution will be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution will be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor will, in the exercise of their good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but will not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

7.3     Means of Cash Payment. Cash payments pursuant to this Plan will be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

7.4     Record Date for Distributions. As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims and Interests will be closed, and there will be no further changes in the holder of record of any Claim or Interest.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor will have no obligation to recognize any transfer of any Claims or Interests occurring after the Distribution Record Date, and the Reorganized Debtor will instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Reorganized Debtor may, in the exercise of her good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but will have no obligation to do so.

7.5     Delivery of Distributions. All Distributions, deliveries, and payments to the holders of any Allowed Claims will be made to the addresses set forth on the respective proofs of Claim filed in the Bankruptcy Case by such Claimants or, if the Distribution is to be made based

on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment will be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution will be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then-current address, at which time all missed Distributions will be made to the holder of such Allowed Claim.  However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions will be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of her sole discretion.  After such date, all Unclaimed Property will revert to the Reorganized Debtor and the Claim of any holder with respect to such property will be discharged and forever barred.

7.6     W-9 Forms.  W-9 forms must be provided to the Reorganized Debtor within thirty (30) days of a request made by the Reorganized Debtor.  If no W-9 form is provided within thirty (30) days of such request, the Claim of such person or entity will be discharged and forever barred.

7.7     Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check will be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check will be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks will be discharged and forever barred.

7.8     Cure Period.  Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument, or document issued pursuant to this Plan, will not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days' written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor will not be in default, and performance during such thirty (30) day cure period will be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period will constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

7.9     Distributions After Substantial Consummation.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation will not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

7.10    No Penalty for Prepayments.  Notwithstanding anything to the contrary in this Plan, the Debtor or Reorganized Debtor may prepay (without penalty) any of the Allowed

Claims, including from funds derived from the sale of her Assets (after payment of Allowed Claims secured thereby), new financing, or otherwise.

## ARTICLE VIII
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

8.1     <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, all Estate Claims will be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Reorganized Debtor.  Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, will be vested in the Reorganized Debtor, which will be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor, Estate, or Reorganized Debtor.  All Estate Claims will be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtor and the Estate hereby specifically reserve and retain the Retained Causes of Action.  The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in this Plan, are provided in the interest of providing maximum disclosure of the Estate Claims of which the Debtor is presently aware and will not act as a limitation on the potential Estate Claims that may exist.  It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other causes of action, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws will all be retained and preserved under this Plan to be transitioned to, and vested in the Reorganized Debtor.  All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

8.2     <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses will be transferred to, and vested in, the Reorganized Debtor.  For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to Section 558 of the Bankruptcy Code.  All Estate Claims will be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

8.3     <u>Assertion of Estate Claims and Estate Defenses</u>. The Reorganized Debtor will have, and be vested with, the exclusive right, authority, and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

## ARTICLE IX
## PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

9.1 <u>Claims Listed in Schedules as Disputed</u>. Any Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no proof of Claim has been timely filed, will be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

9.2 <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Reorganized Debtor will have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim, including as follows:

(a) From and after the Effective Date, the Reorganized Debtor will have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

(b) From and after the Effective Date, the Reorganized Debtor will have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 will not apply to any settlement or compromise of a Contested Claim after the Effective Date.

9.3 <u>Objection Deadline</u>. All Objections to Claims will be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline will not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline. Any such motion may be granted without notice or a hearing. In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline will nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date will be of no force and effect and need not be objected to by the Reorganized Debtor. Nothing contained herein will limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

9.4 <u>Response to Claim Objection</u>. If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim will file a written response to such Objection within twenty-one (21) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection will contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

9.5     Distributions on Account of Contested Claims. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim will be determined based upon its date of Allowance, and thereafter Distribution will be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution will be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim will be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement will continue to be subject to Section 502(e) of the Bankruptcy Code.

9.6     No Waiver of Right to Object. Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order will waive, relinquish, release, or impair the Reorganized Debtor's right to object to any Claim.

9.7     Offsets and Defenses. The Reorganized Debtor will be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor will constitute "core" proceedings under 28 U.S.C. § 157(b)(2).

9.8     Claims Paid or Reduced Prior to Effective Date. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated, and not contingent will be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan will preclude the Reorganized Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1    Assumption and Rejection of Executory Contracts. All Executory Contracts, including but not limited to the Settlement Agreement, will be deemed assumed by the Debtor upon the Effective Date, unless an Executory Contract (a) is identified on the Schedule of Rejected Executory Contracts to be included in a Plan Supplement, (b) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (c) is identified in this Plan or the Confirmation Order to be rejected, or (d) is the subject of a motion to reject filed on or before the Confirmation Date.  The Debtor may file a motion for the assumption or rejection of any Executory Contract at any time through the Effective Date and such motion will be determined by the Bankruptcy Court thereafter.

10.2    Cure Claim Payments. To the extent any Cure Claims exist for any Executory Contracts to be assumed hereunder, they will be treated as provided in this Section.  Unless the holder of a Cure Claim and the Debtor or Reorganized Debtor agrees in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is otherwise provided for under the Plan, any cure payment which may be required by Section 365(b)(1) of the Bankruptcy Code under an Executory Contract that is assumed under this Plan

14

will be made by the Reorganized Debtor on the Initial Distribution Date. Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption, the Reorganized Debtor will make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by Section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

10.3    Bar to Rejection Claims. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract will be forever barred and will not be enforceable against the Reorganized Debtor or the Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor and her bankruptcy counsel, or the Reorganized Debtor and her counsel, as the case may be, by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

10.4    Rejection Claims. Any Rejection Claim not barred by Section 10.3 above will be classified as Class 3, subject to the provisions of Sections 502(b)(6) and 502(g) of the Bankruptcy Code; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, will be limited in accordance with Section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims will be deemed as Contested Claims until Allowed. Nothing contained herein will be deemed as an admission by the Debtor or the Reorganized Debtor that the rejection of any Executory Contract gives rise to or results in a Rejection Claim or will be deemed as a waiver by the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

10.5    Reservation of Rights. Nothing contained in the Plan will constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or that the Debtor or Estate have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor will have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

**ARTICLE XI**
**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN**

11.1    Conditions to Confirmation and Effectiveness of Plan. The Plan will not become effective until the following conditions will have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order will have been entered, in form and substance acceptable to the Debtor, and is final and non-appealable; (b) the necessary Plan Documents have been executed and delivered; and (c) all other conditions specified by the Debtor have been satisfied.

11.2    Notice of the Effective Date. Promptly upon the occurrence of the Effective Date, the Reorganized Debtor will cause to be filed with the Court and served on all Creditors and parties-in-interests a notice of the Effective Date.

## ARTICLE XII
## EFFECT OF THE CONFIRMATION OF THE PLAN

12.1    Compromise and Settlement. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtor or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor or the Estate. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings will constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Debtor's bankruptcy Estate, Creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein will be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons will be precluded and forever barred by the Plan Injunction from asserting against the Debtor and her affiliates, successors, assigns, the Estate, the Assets, or the Reorganized Debtor any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

12.2    Discharge. The terms, covenants, and consideration under the Plan will be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor, and the Assets to the fullest extent allowed by the Bankruptcy Code. Except as otherwise expressly provided herein, upon the granting of a discharge by the Bankruptcy Court pursuant to Section 1192 (the "Order of Discharge"), the Debtor, and her successors in interest and assigns, will be deemed discharged and released pursuant to Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to Section 502(c) of the Bankruptcy Code. The Confirmation Order and, if applicable, the Order of Discharge will be judicial determinations of discharge of all liabilities of the Debtor, and her successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

12.3    PLAN INJUNCTION. THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR, THE ESTATE, OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE

EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT, OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTOR, REORGANIZED DEBTOR, OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE, THE DEBTOR, OR THE REORGANIZED DEBTOR; (ii) THE CREATION, PERFECTION, OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT, OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTOR OR REORGANIZED DEBTOR; OR (iii) TAKING ANY ACTION IN RELATION TO THE DEBTOR, ESTATE, OR REORGANIZED DEBTOR, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION WILL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

12.4    Set-offs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims, and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims, and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan will constitute a waiver or release of any such Claims, rights, Estate Claims, and Estate Defenses that the Estate may possess against such Claimant. In no event will any Claimant or Interest holder be entitled to set off any Claim or Interest against any Claim, right, or Estate Claim of the Debtor without the consent of the Debtor or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Section 553 of the Bankruptcy Code or otherwise.

12.5    Recoupment. Except as otherwise expressly provided for in the Plan, in no event will any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtor or the Reorganized Debtor unless: (a) such holder actually provides notice thereof in writing to the Debtor or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment; and (c) the Debtor or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Reorganized Debtor consent to the requested recoupment. The Debtor and the Reorganized Debtor will have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor or the Reorganized

Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest will be allowed.

12.6    Turnover. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to Section 542 or 543 of the Bankruptcy Code will be deemed transferred to and vested in the Reorganized Debtor.

12.7    Automatic Stay. The automatic stay pursuant to Section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, will remain in effect until the Effective Date of the Plan as to the Debtor, the Estate, and all Assets. As of the Effective Date, the automatic stay will be replaced by the Plan Injunction.

## ARTICLE XIII
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

13.1    Retention of Jurisdiction. Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court will retain exclusive jurisdiction of all matters arising in, arising under, and related to this Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)    To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to Sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)    To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)    To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan in connection with the enforcement of any remedies made available under the Plan, including without limitation: (i) adjudication of all rights, interests or disputes relating to any of the Assets; (ii) the valuation of all Collateral; (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)    To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein or in the Confirmation Order;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to Section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the Plan Injunction against any Person;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to Section 505 of the Bankruptcy Code;

(o)     To enter a Final Decree closing this Bankruptcy Case; and

(p)     To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof.

13.2    <u>Abstention and Other Courts</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Bankruptcy Case, this Article of the Plan will have no effect upon and will not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.3    <u>Non-Material Modifications</u>. The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant to this Section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

13.4    <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the

requirements of Section 1193(a) of the Bankruptcy Code. This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of Section 1193(b) or 1193(c), as applicable.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1    Severability. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision will not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability will not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the re-solicitation of any acceptance or rejection of the Plan.

14.2    Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan and Confirmation Order may only be amended in writing and may not be changed, contradicted, or varied by any oral statement, agreement, warranty, or representation. Neither the Debtor nor her attorneys have made any representation, warranty, promise, or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan or the Confirmation Order or other order of the Bankruptcy Court.

14.3    Waiver. The Reorganized Debtor will not be deemed to have waived any right, power, or privilege unless the waiver is in writing and signed by the Reorganized Debtor. There will be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver Section. The waiver of any right under the Plan will not act as a waiver of any other or subsequent right, power, or privilege.

14.4    Notice. Any notice or communication required or permitted by the Plan will be given, made, or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules; or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)    If to the Reorganized Debtor, notice will be sent to the Reorganized Debtor and counsel of record for the Reorganized Debtor.

(c)    Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this Section.

(d)    Any notice given, made, or sent as set forth above will be effective upon being: (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) emailed to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service, such as FedEx.

14.5    Compliance with All Applicable Laws. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor will comply with such law, rule, regulation, or order; provided, however, that nothing contained herein will require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

14.6    Duties to Creditors. No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member, or employee of the Debtor will ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate; (b) the Plan, including the proposal, negotiation, confirmation, and consummation of the Plan; or (c) any act or omission relating to the administration of the Plan after the Effective Date.

14.7    Binding Effect. The Plan will be binding upon and will inure to the benefit of the Reorganized Debtor, the holders of the Claims or Liens, the holders of Interests, and their respective successors-in-interest and assigns.

14.8    Governing Law, Interpretation. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas will govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan will control any inconsistent term or provision of any other Plan Documents.

14.9    Filing of Additional Documents. On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.10    Computation of Time. Bankruptcy Rule 9006 will apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act, or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act, or event will be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day will be due and payable on the next succeeding Business Day.

14.11    Elections by the Reorganized Debtor. Any right of election granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor, or Person.

14.12    Release of Liens. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to the Reorganized Debtor will be deemed to be released, terminated, and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

14.13   <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.14   <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Reorganized Debtor will comply with all withholding and reporting requirements imposed by federal, state, and local Taxing Authorities and all Distributions under the Plan will be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution under the Plan.

*[The remainder of this page has been left intentionally blank.]*

Dated: September 13, 2021    Respectfully submitted,

           MARY BRENNA RYLEE


By: /s/ Mary Brenna Rylee
   Mary Brenna Rylee, Debtor


HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Tel: (512) 472-5456
Fax: (512) 479-1101

By: /s/ Jameson J. Watts
   Jameson J. Watts
   Texas Bar No. 24079552
   jameson.watts@huschblackwell.com
   Lynn Hamilton Butler
   Texas Bar No. 03527350
   lynn.Butler@huschblackwell.com

**COUNSEL FOR DEBTOR
MARY BRENNA RYLEE**

## CERTIFICATE OF SERVICE

I certify that on September 13, 2021, a copy of this document was served by electronic service on parties registered to receive notice via the Court's CM/ECF system or via United States first-class mail as listed below.

/s/ Jameson J. Watts
Jameson J. Watts

**Notice will be served via ECF to:**

Mary Brenna Rylee
c/o Jameson J. Watts
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, TX 78701
Jameson.watts@huschblackwell.com

American Momentum Bank
c/o Bruce Ruzinsky
Jackson Walker LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Email: bruzinsky@jw.com

American Momentum Bank
c/o Jennifer F. Wertz
100 Congress Avenue, Suite 1100
Austin, TX 78701
Email: jwertz@jw.com

Ector CAD
c/o Don Stecker
Linebarger Goggan Blair & Sampson, LLP
112 E. Pecan Street, Suite 2200
San Antonio, TX 78205
sanantonio.bankruptcy@publicans.com

Michael G. Rylee
c/o Fareed Iqbal Kaisani
Platt Cheema Richmond PLLC
1201 N. Riverfront Blvd., Suite 150
Dallas, TX 75207
fkaisani@pcrfirm.com

Southstar Bank, S.S.B.
c/o Richard T. Chapman
Anderson, Smith, Null & Stofer, L.L.P.
100 West Goodwin, Suite 700
Victoria, TX 77902
rchapman@andersonsmith.com

Subchapter V Trustee
c/o Michael Colvard
Weston Center
112 East Pecan Street, Suite 1616
San Antonio, TX 78205
mcolvard@mdtlaw.com

Travis County
c/o Jason A. Starks
Travis County Attorney
P.O. Box 1748
Austin, TX 78767
Email: jason.starks@traviscountytx.gov

United States Department of Justice
Office of the United States Trustee
c/o J. Casey Roy, Trial Attorney
903 San Jacinto Blvd., Suite 230
Austin, TX 78701
Casey.Roy@usdoj.gov

United States Trustee – AU12
903 San Jacinto Blvd., Suite 230
Austin, TX 78701
ustpregion07.au.ecf@usdoj.gov

GTG Solutions, Inc.
c/o Frank B. Lyon
3508 Far West Blvd., Suite 170
Austin, TX 78731
Frank@franklyon.com

**Notice will be mailed via United States first-class mail to:**

Briggs & Veselka Co
c/o Edward Fowler
901 S. Mopac Expressway
Bldg. II, Suite 450
Austin, TX 78746

Capital One Bank USA NA
PO Box 31293
Salt Lake City, UT 84131-1293

Community National Bank
1502 Avenue M
Hondo, TX 78861

Community National Bank
2659 John Ben Shepperd Pkwy.
Odessa, TX 79762

Friday Milner Lambert Turner, PLLC
3401 Glenview Avenue
Austin, TX 78703

GTG Solutions, Inc.
c/o Bob. J. Shelton P.C.
5103 Chad Drive
Arlington, TX 76017

GTG Solutions, Inc.
c/o Anna Hand-Registered Agent
500 West Sherman
Chico, TX 76431

Haygood Law Firm
c/o Lane Haygood
522 North Grant Avenue
Odessa, TX 79761

Internal Revenue Service
Special Procedures
Stop 5022 AUS
300 East 8th Street
Austin, TX 78701

Internal Revenue Service
Centralized Insolvency Operations
P. O. Box 7346
Philadelphia, PA 19101-7346

James Firm PLLC
c/o Amanda James
1316 5th Avenue
Fort Worth, TX 76104

John Manicom
PO Box 341420
Austin, TX 78734

Kelly L. Burris
Cordell & Cordell PC
301 Congress Avenue, Suite 1800
Austin, TX 78701

Michael G. Rylee
101 Colorado, Apt. 3007
Austin, TX 78701-4292

Texas Comptroller of Public Accounts
Revenue Acctg Div - Bankruptcy Section
P.O. Box 13528
Austin, TX 78711-3528

Texas Workforce Commission
Tax-Collections
101 E. 15th Street
Austin, TX 78778-0001

Travis County Tax Assessor-Collector
P.O. Box 149326
Austin, TX 78714

# EXHIBIT A
## DEFINITIONS AND RULES OF CONSTRUCTION

### A. Defined Terms.

In addition to such other terms as are defined in other Sections of this Plan, the following terms will have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1. "Administrative Bar Date" will refer to the deadline to file Claims for Allowance as an Administrative Expense set forth in Section 3.1(e) of the Plan.

2. "Administrative Expense" includes any cost or expense of administration of the Debtor's Chapter 11 case allowed under Subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under Section 1930, Chapter 123 of Title 28 of the United States Code.

3. "Allow" or "Allowance," when used with respect to a Claim, means the process of determining whether a Claim is to be Allowed pursuant to this Plan.

4. "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim: (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided, however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim will not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final Order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

5. "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Effective Date, whether real or personal, tangible, or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in Section 541 and, as applicable, Section 1186 of the Bankruptcy Code. Without limiting the generality of the foregoing, this will include all of the following: Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance, and Estate Contracts.

6. "Avoidance Action" means a cause of action and rights assertable by the Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under Sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy

Code, and including all causes of action, rights and remedies assertable by the Estate pursuant to Section 544 of the Bankruptcy Code.

7.  "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

8.  "Bankruptcy Case" means the above-styled case, Case No. 21-10436-tmd before the United States Bankruptcy Court for the Western District of Texas, Austin Division.

9.  "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

10.  "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Austin Division.

11.  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "Bankruptcy Rule."

12.  "Bar Date" is the date established by the Bankruptcy Court, including through any standing order, for filing proofs of Claim or proofs of Interest.

13.  "Beneficiary" means any Person that is the holder of an Allowed Claim entitled to receive Distributions from the Reorganized Debtor pursuant to this Plan.

14.  "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

15.  "Cash" means cash and cash equivalents, including funds held in a checking or money market account.

16.  "Cash Collateral" will have the same meaning as in Section 363(a) of the Bankruptcy Code.

17.  "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

18.  "Claimant" means the holder of a Claim.

19.     "Class" means a category or group of holders of Claims or Interests as designated in Article II of the Plan.

20.     "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

21.     "Confirmation Date" means the date of entry of the Confirmation Order.

22.     "Confirmation Hearing" means the hearing, as it may be continued from time-to-time, conducted by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

23.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

24.     "Contested," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of the Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of the Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims will be deemed as Contested until the applicable Objection Deadline has passed.  In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to Section 510(c) of the Bankruptcy Code, will likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

25.     "Contingent Flex 24 Unsecured Claim" means a Claim against Flex 24 for which the Claimant has an unsecured Claim against the Debtor based on: (i) the Debtor's execution of a guaranty for the Flex 24 obligation; or (ii) any liability against the Debtor based on her ownership of or membership interest in Flex 24, including any liability resulting from piercing the corporate veil of Flex 24 or other similar theories of recovery based on the Debtor's ownership, control, or authority over Flex 24.

26.     "Contingent FLX Unsecured Claim" means a Claim against FLX for which the Claimant has an unsecured Claim against the Debtor based on: (i) the Debtor's execution of a guaranty for the FLX obligation; or (ii) any liability against the Debtor based on her ownership of or membership interest in FLX, including any liability resulting from piercing the corporate veil of FLX or other similar theories of recovery based on the Debtor's ownership, control, or authority over FLX.

27.     "Creditor" will have the same meaning as in Section 101(10) of the Bankruptcy Code.

28.     "Cure Claim" will refer to a Claim under Section 365(b) of the Bankruptcy Code (a) for the payment or other performance required to cure any existing default under an Executory Contract or (b) for any actual pecuniary loss resulting from any such default under an Executory Contract.

29.     "Debtor" means Mary Brenna Rylee.

30.     "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

31.     "Disposable Income" will have the meaning provided for such term in Section 1191(d) of the Bankruptcy Code.

32.     "Distribution" will refer to and include any distribution of any property pursuant to this Plan.

33.     "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XI are satisfied.

34.     "Equitable Subordination" will be broadly construed and will encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to Section 510(c) of the Bankruptcy Code.

35.     "Estate" means the bankruptcy estate of the Debtor in this Bankruptcy Case.

36.     "Estate Cash" means Cash held by the Estate.

37.     "Estate Claims" will include any and all Claims or causes of action or rights of action held by the Estate against any Person, whether based on a contract, applicable tort or common law, or any law, statute, or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action, or any right to recover money or property from any Person, as well as all legal and equitable rights and remedies incident to any of the forgoing.  Estate Claims will also include all applicable privileges in relation thereto, including the attorney-client privilege and the work product privilege.

38. "<u>Estate Defenses</u>" will refer to all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by the Estate against any Person, including without limitation all affirmative defenses referenced in Fed. R. Civ. P. 8(c). Estate Defenses will also include all rights and remedies for Equitable Subordination. Estate Defenses will also include all applicable privileges with respect thereto, including the attorney-client privilege and work product privilege.

39. "<u>Estate Insurance</u>" will include any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

40. "<u>Executory Contract</u>" will refer to any executory contract or unexpired lease which is subject to Section 365 of the Bankruptcy Code.

41. "<u>Estate Professional</u>" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to Sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

42. "<u>Final Decree</u>" means the decree contemplated under Bankruptcy Rule 3022 closing this Bankruptcy Case.

43. "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari will have expired, and which such order or judgment will no longer be subject to appeal, rehearing, or certiorari proceeding.

44. "<u>Flex 24</u>" means Flex 24 Fitness, L.L.C., a Texas limited liability company.

45. "<u>FLX</u>" means FLX Energy Services, L.L.C., a Texas limited liability company.

46. "<u>General Unsecured Claim</u>" means a Claim that is not a Tax Claim, is not a Secured Claim, is not an Administrative Expense, is not a Contingent Flex 24 Unsecured Claim, is not a Contingent FLX Unsecured Claim, and is not entitled to priority of distribution pursuant to Section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to Section 502(g) of the Bankruptcy Code.

47. "<u>Governmental Bar Date</u>" means the date by which governmental units must file proofs of claim pursuant to Section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

48. "<u>Governmental Unit</u>" will have the same meaning as in Section 101(27) of the Bankruptcy Code.

49. "<u>Initial Distribution Date</u>," when used with respect to any Contested Claim or Rejection Claim, means the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article IV of this Plan applicable to each

such Claim specify a different date, then the date as calculated pursuant to the terms of Article IV of this Plan applicable to each such Claim.  The Initial Distribution Date will be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim became an Allowed Claim.

50.     "Interest" means any equity interest in the Debtor.

51.     "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

52.     "Objection" includes (i) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (ii) as to any Taxing Authority, will include a proceeding commenced under Section 505 of the Bankruptcy Code to determine the legality or amount of any tax.  Any pleading seeking to subordinate or recharacterize a Claim will also constitute an Objection.

53.     "Objection Deadline" means the later of (i) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (ii) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

54.     "Person" includes any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or any other entity of every type or nature.

55.     "Petition Date" means May 31, 2021.

56.     "Plan" means this proposed Subchapter V Plan of Reorganization, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

57.     "Plan Documents" will refer to the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article I hereof.

58.     "Priority Claim" means a Claim that is entitled to priority of payment under Sections 507(a)(4) through (7) of the Bankruptcy Code.

59.     "Property Taxes" means such taxes assessed by any Taxing Authority against any property of the Debtor based on the value thereof, as allowed by applicable state and local law.

60.     "Pro Rata Share" means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

61.     "Reorganized Debtor" means the Debtor from and after the Effective Date of this Plan.

62.     "Retained Causes of Action" means those causes of action, claims, counterclaims, defenses, and rights of offset or recoupment retained by the Reorganized Debtor as described in Section 8.1 of the Plan

63.     "Rejection Claim" means a Claim arising under Section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

64.     "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor in this Bankruptcy Case as required by Section 521 of the Bankruptcy Code.

65.     "Schedule of Rejected Executory Contracts" means the Schedule of Rejected Executory Contracts to be provided in the Plan Supplement.

66.     "Secured Claim" means (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected, and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in Section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim will be a Secured Claim), and (b) any valid and enforceable right of offset asserted against the Debtor or any Asset.

67.     "Secured Creditor" means the holder of a Secured Claim.

68.     "Substantial Consummation" means the day on which the Estate's Assets are transferred to the Reorganized Debtor.

69.     "Taxing Authority" will include (i) the Internal Revenue Service and (ii) the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

70.     "Tax Claim" means a Claim entitled to priority of payment pursuant (i) to Section 507(a)(8) of the Bankruptcy Code or (ii) a Claim for Property Taxes.

71.     "Unclaimed Property" means any Cash, Distribution, payment, or any other property unclaimed for a period of one hundred twenty (120) days after the date of the applicable Distribution, or such longer period which the Reorganized Debtor may fix in the exercise of her good faith business judgment.

B.      **Rules of Interpretation and Construction of Terms.**

72.     Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time to time.  The headings in the Plan are for convenience and reference only and will not limit or otherwise affect the provisions or the interpretation hereof.

73.     The words "herein," hereof," and "hereunder" or other words of similar import will refer to the Plan as a whole and not to any particular Article, Section, Subsection, or clause contained in the Plan, unless the context requires otherwise.

74.     Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine, or neutral form will include all of the masculine, feminine, or neutral form.

75.     The rules of construction set forth in Section 102 of the Bankruptcy Code will apply to this Plan, the Confirmation Order, and all Plan Documents.

76.     References herein to "after notice and hearing" or other similar language will have the same meaning as in Section 102(1) of the Bankruptcy Code.  Otherwise, terms used herein that are not specifically defined herein will have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

77.     All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing.  Holders of Claims and Interests will be served with a copy of the Plan Documents.   Additional copies may be obtained of the Plan Documents, once filed, by a written request sent to the following address: Husch Blackwell, LLP, 111 Congress Ave., Suite 1400, Austin, Texas 78701, Attention: Penny Keller; penny.keller@huschblackwell.com.

78.     Reference herein to any agreement, contract, instrument, or other document in this Plan will refer to such agreement, contract, instrument, or document as amended, supplemented, or modified.

**EXHIBIT B**
**CASH ON HAND ON THE EFFECTIVE DATE**

Cash on hand on the Effective Date[3]:                    $25,000.00

Less –

      Amount of Administrative Expenses[4] payable
      on Effective Date of Plan                    $188,286.00

      Amount of statutory costs and charges                    $0.00

        Balance after paying these amounts…......($153,286.00)

The sources of the cash the Debtor will have on hand by the closing on the sale of the Homestead are estimated as follows:

| | |
|---|---|
| $25,000 | Cash in the Debtor's bank account and Husch Blackwell's IOLTA account now |
| + $112,500 | Additional cash the Debtor will receive from the 2019 tax refund |
| + $112,500 | Estimated cash the Debtor will receive from the 2020 tax refund |
| + $968,000 | Estimated cash the Debtor will receive from sale of the Homestead |
| + 0 | Borrowing |
| + $0 | Capital Contributions |
| $1,218,000 | Total |

---

[3] These figures are presented under the assumption that the Effective Date will be on or around November 1, 2021.

[4] These expenses estimate $135,000 in post-petition attorneys' fees and expenses for Husch Blackwell LLP, $25,716 for fees and expenses of the Subchapter V Trustee, and $27,570 for fees and expenses of the Financial Advisor, Erick White with Harney Partners.

# EXHIBIT C
## INCOME PROJECTIONS

**Flex 24 Fitness, L.L.C.**

Forecasted Budget

For 5 Years

**Forecast**

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Sales | $ 1,017,073.00 | $ 1,144,208.00 | $ 1,258,628.00 | $ 1,321,560.00 | $ 1,387,638.00 |
| Other Income | $ - | $ - | $ - | $ - | $ - |
| **Total Revenue** | **$ 1,017,073.00** | **$ 1,144,208.00** | **$ 1,258,628.00** | **$ 1,321,560.00** | **$ 1,387,638.00** |
| Cost of Goods Sold | $ (40,683.00) | $ (45,768.00) | $ (50,345.00) | $ (52,862.00) | $ (55,506.00) |
| **Gross Profit** | **$ 976,390.00** | **$ 1,098,440.00** | **$ 1,208,283.00** | **$ 1,268,698.00** | **$ 1,332,132.00** |
| | | | | | |
| Payroll & Benefits | $ (366,146.00) | $ (384,454.00) | $ (403,676.00) | $ (423,860.00) | $ (445,053.00) |
| Repairs and Maintenance | $ (367,914.48) | $ (59,499.00) | $ (65,449.00) | $ (68,721.00) | $ (72,157.00) |
| Equipment | $ (45,000.00) | $ (45,000.00) | $ (45,000.00) | $ (45,000.00) | $ (45,000.00) |
| SG&A | $ (42,717.00) | $ (48,057.00) | $ (52,862.00) | $ (55,506.00) | $ (58,281.00) |
| Bank Fees | $ (35,598.00) | $ (38,445.00) | $ (42,290.00) | $ (44,404.00) | $ (46,625.00) |
| Utilities | $ (60,000.00) | $ (70,000.00) | $ (71,400.00) | $ (72,828.00) | $ (74,285.00) |
| Property, Franchise, & Sales Taxes | $ (42,599.00) | $ (44,430.00) | $ (46,077.00) | $ (46,983.00) | $ (47,935.00) |
| Mortgage Payments | $ (191,413.92) | $ (191,413.92) | $ (191,413.92) | $ (191,413.92) | $ (191,413.92) |
| Insurance | $ (26,058.00) | $ (26,579.00) | $ (27,110.00) | $ (27,653.00) | $ (28,206.00) |
| Travel & Entertainment | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) |
| Professional Fees | $ (6,500.00) | $ (6,500.00) | $ (6,500.00) | $ (6,500.00) | $ (6,500.00) |
| **Total Operating Expenses** | **$ (1,188,946.40)** | **$ (919,377.92)** | **$ (956,777.92)** | **$ (987,868.92)** | **$ (1,020,455.92)** |
| **Normalized EBITDA** | **$ (212,556.40)** | **$ 179,062.08** | **$ 251,505.08** | **$ 280,829.08** | **$ 311,676.08** |

**EXHIBIT D**
**LIQUIDATION ANALYSIS**

*Debtor's Estimated Liquidation Value of Assets[5]*

| Assets | |
|---|---|
| a. Cash on hand | $25,000 |
| b. Accounts receivable | $0 |
| c. Inventory | $0 |
| d. Office furniture & equipment | $0 |
| e. Machinery & equipment | $0 |
| f. Automobiles | $70,000 |
| g. Building & Land | $2,040,000 |
| h. Customer list | $0 |
| i. Investment property (such as stocks, bonds or other financial assets) | $0 |
| j. Lawsuits or other claims against third-parties | $0 |
| k. Other intangibles (such as avoiding powers actions) | $0 |
| | |
| *Total Assets at Liquidation Value* | $2,135,000 |
| | |
| **Less:** Secured creditors' recoveries | $871,368.75 |
| | |
| **Less:** Chapter 11 Administrative Expenses | $188,286.00 |
| **Less:** Priority claims, excluding Administrative Expense claims | $40,556.60 |
| (1) Balance that would remain for unsecured claims | $1,411,360.65 |
| (2) Total dollar amount of unsecured claims | $3,848,698.37 |
| *Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:* | 36.67% |
| *Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:* | 100% |

---

[5] These figures are the Debtor's 50% interest in community property that would be available to creditors in a Chapter 7 liquidation.