**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 21-10436-TMD |
| MARY BRENNA RYLEE | § | |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

**SUB V TRUSTEE'S RECOMMENDATIONS TO CONFIRMATION OF PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(b)**

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

Now comes Michael G. Colvard, Subchapter V Trustee (herein "Sub V Trustee") within the Mary Brenna Rylee (herein "Rylee" or "Debtor") Small Business Chapter 11 case, to file this Recommendations to Confirmation (the "Recommendations") of the Plan of Reorganization, Dated September 13, 2021 (the "Plan") [Dkt. No. 93], and would show unto the court as follows:

I. **BACKGROUND**

1.1 Rylee filed a Chapter 11 Sub V small business case on May 31, 2021 [Dkt. No. 1]. The Sub V Trustee was appointed on June 2, 2021 [Dkt. No. 13].

1.2 Rylee filed her Plan of Reorganization on September 13, 2021 [Dkt. No. 93] (the "Plan"). The Confirmation Hearing is set for October 25, 2021 at 10:00 a.m. [Dkt. No. 94].

1.3 The Plan provides for treatment of creditors within six primary classes, including Class 1 – Tax Claims; Class 2 – Secured Claims, secured by liens on Debtor's homestead; Class 3 – General Unsecured Claims; Class 4 – Contingent Flex 24 Unsecured Claims; Class 5 – Contingent FLX Unsecured Claims; and, Class 6 – Interest holders.

1.4 The Plan attaches "Projections" as Exhibit C – (the "Projections"), providing Debtor's foreseeable budget and income for Flex 24 Fitness, LLC, on an annual basis for 5 years,

representing what Sub V Trustee understands as Debtor's estimate of future "disposable income" – derived from Flex 24, showing projected disposable income of ($212,55640) in year 1, $179,062.08 in year 2; $251,505.08 in year 3; $280,829.08 in year 4; and, $311,676.08 in year 5. The projections include deductions for wages – which presumably includes Debtor's compensation. The Plan also reveals Debtor's available cash and IRS refunds, and reflects the estimated FMV of Debtor's homestead – which is to be liquidated with net proceeds made available for creditor distributions. Debtor anticipates $1.6 million in equity and sales proceeds derived from the homestead sale.

    1.5    The Plan proposes the following treatment of allowed claims within Classes 1-6:

1. Class 1 – <u>Tax Claims</u> – to retain all liens and to be paid in full within 14 days after closing of the sale of Debtor's homestead.

2. Class 2 – <u>Secured Claim</u> – SouthStar Mortgage is the only secured claimant, and will be paid in full upon closing of the sale of the Debtor's homestead with post-effective date monthly payments to be paid 53% by Debtor and 47% by Debtor's spouse.

3. Class 3 – <u>General Unsecured Claims</u> – to be paid in full with interest within 14 days following the sale of Debtor's homestead.

4. Class 4 – <u>Contingent Flex 24 Unsecured Claims</u> – consisting primarily of the guaranty obligations owed to AMB – based on Debtor's guaranty – which are to be paid pursuant to a renewal and modification agreement – which payments are to be satisfied by Flex 24 – outside the Plan.

5. Class 5 – <u>Contingent FLX Unsecured Claims:</u> consisting of the claims: one by AMB based on Debtor's guaranty, and two by GTG based upon a

pending state court lawsuit. Debtor has entered a settlement agreement transferring here interests in FLX to her spouse in exchange for a release of the AMB guaranty. Debtor is contributing $75,000.00 for litigation/settlement in relation to the GTG lawsuit.

1.6 Debtor plans to assume all executory contracts. (See, Plan, Art. X) and does not indicate that any contracts are to be rejected (See, Plan, p. 6 Art. 6) – proposing cure payments on the initial distribution date.

1.7 Nine proofs of claims were filed prior to the August 9, 2021 bar date. The total filed claims amount is $5,725,318.88, of which $1,903,092.11 are designated as secured claims and $0.00 are designated as priority claims.

1.9 Debtor's Plan appears to anticipate that available cash and homestead sales proceeds will be sufficient to make all required Plan payments, and does not require projected "disposable income" from future earnings to be used for Plan payments above the available cash and homestead sales proceeds. The Plan proposed treatment to creditors appears to require:

1) Current ad valorem tax claims for 2021, estimated at approximately $51,000.00.

2) SouthStar Mortgage Claim of approximately $1,898,919.00.

3) General Unsecured Claims – substantially at $33,180.44.

Debtor's available cash, tax refund and projected net sales proceeds from the sale of her homestead of approximately $1.6 million, appear sufficient to satisfy all Plan requirements.

## II. ARGUMENT/ AUTHORITY

2.1 BANKRUPTCY CODE § 1191(a) provides that the court shall confirm a plan only if all the requirements under § 1129(a), other than paragraph (15) of § 1129 are met. Because §

1129(a)(15) no longer applies, debtors are not specifically required to file post-confirmation monthly reports in a Subchapter V case to the U.S. Trustee's Office. Further, § 1129(a)(8) and (10) are not applicable if a plan is confirmed under § 1191(b). Consequently if all other § 1129(a) requirements are met including acceptance by all impaired classes under § 1129(a), the court is required to confirm a consensual plan; and, if requirements of § 1191(b) are satisfied, including requirements that plan not discriminate and is fair and equitable, the Court may confirm a nonconsensual plan. *In re Pearl Res. LLC,* 2020 Bankr. LEXIS 2683 (Bankr. S.D. Tex. 2020). Where the Subchapter V debtor can not obtain full consent for the Plan § 1191(b) sets the cramdown standards, replacing requirements under § 1129(b). *In re Pearl Res.,* @ 29.

      2.2      BANKRUPTCY CODE § 1191(c) specifies that the provisions of a plan are to be fair and equitable, with respect to each class of claims, and includes the requirement that the plan provide for all projected "disposable income" received by the Debtor to be applied to make payments under the plan. Compliance with the projected disposable income requirement (or "best efforts") is a mandatory condition for cramdown confirmation under § 1191(b). A GUIDE TO SMALL BUSINESS REORGANIZATION ACT OF 2019, p. 55, n. 205, Paul W. Bonapfel, U.S. Bankruptcy Judge, N.D. Ga., February 2020. *In re Pearl Res.,* @ 65.

      2.3      BANKRUPTCY CODE § 1191(d) defines "disposable income" and provides for plan confirmation if all requirements of § 1129(a) are satisfied – except for § 1129(a)(8)(10) and (15) which are inapplicable. Included within § 1129(a) compliance requirements is § 1129(a)(7)(A)(ii) setting forth a liquidation test, requiring creditors to receive property of a value which is not less than the creditor would receive upon liquidation. Debtor's Plan appears to utilize all available disposable income to the extent recovery to satisfy all allowed claims.

2.4    BANKRUPTCY CODE § 1186(a) provides if a plan is confirmed under § 1191(b) – property of the estate includes, in addition to property specified within § 541, <u>all property the debtor</u> acquires after the case is commenced [emphasis added] – but before the case is closed, dismissed or converted and § 1186(b) provides that debtor shall remain in possession of all property of the estate following plan confirmation until plan completion.  Consequently the Plan should provide that all property of the estate and all post-confirmation income remains property of the post-confirmation estate until all Plan payments are made, if the Plan is confirmed under § 1191(b).  Article VI of the Plan contains provisions revesting all property of the estate in Debtor, which applies if the Plan is confirmed as a consensual plan under § 1191(a) – but not under § 1191(b) – consequently, Plan provisions under Article VI ¶ 6.1 – requires modification if the Plan is confirmed under § 1191(b).  All property of the estate is to remain property of the post-confirmation estate – including all post-confirmation property – which includes any additional income from whatever source if a case is confirmed under § 1191(b).

2.5    A plan confirmed under § 1191(b) requires all plan payments to be contributed to the Sub V Trustee, who is to make plan payments under § 1194(b).  Post-confirmation payment procedures, setting forth dates of payment, dates for disbursement and providing for determination of allowed claims, to the extent such process involve duties of the Sub V Trustee, should be included within the Plan in order to specify Sub V Trustee's payment procedures and requirements. In addition compensation for any professionals retained, as well as the Sub V Trustee's compensation must be provided within the  Plan.

2.6    BANKRUPTCY CODE § 1191(c)(3)(B) requires the Plan provide adequate remedies to protect holders of claims, in the event debtor fails to make the required payments.  One explicate remedy referenced within § 1191(c)(3)(B) is the liquidation of non-exempt assets – intended to

protect holders of claims in the event Plan payments are not made. Rights to Debtor's property must be preserved and unsecured creditors' rights must include the opportunity to urge default remedies, including rights to convert the case to a Chapter 7 or for the appointment of a post-confirmation Trustee. The Plan does not appear to provide for default or rights of the creditors having allowed claims upon default, including rights to seek conversion, dismissal or liquidation.

2.7     The Plan neglects to outline Sub V Trustee post-confirmation duties and rights nor does the Plan provide for post-confirmation compensation of the Sub V Trustee, if the Plan is confirmed under § 1191(b).

2.8     Sub V Trustee's recommendations to the Plan are:

A.  The Plan neglects to provide adequate remedies in the event of default as required under § 1191(c)(3)(B). No default remedies are provided and "liquidation" as specified under § 1191(c)(1)(B) is not included as a remedy under the Plan. The Plan should be amended to provide adequate default remedies.

B.  The Plan proposes the revesting of property in Debtor upon the Effective Date (Plan, Article VI) which applies upon confirmation under § 1191(a). However, if the Plan is confirmed under § 1191(b) – all property is to remain property of the estate until all Plan payments have been made.

C.  Plan, Article XII, ¶ 12.2 provides for Debtor's discharge upon confirmation applicable upon confirmation under § 1191(a). However, if confirmed under § 1191(b) discharge is not effected until completion of all payments required under the Plan.

D. Plan Article XII, ¶ 12.7 provides for the automatic stay to remain effect until the Effective Date, however, if confirmed under § 1191(b) all property remains property of the estate in the possession of Debtor under § 1186(b), thereby resulting in the continuance of the automatic stay under § 362(c)(1).

E. The Plan neglects to contain provisions dealing with Sub V Trustee's duties and compensation if the Plan is confirmed under § 1191(b). The Plan should contain the following provisions if confirmed under § 1191(b) relating to the duties of the Sub V Trustee:

   a. Sub V Trustee will act as disbursing agent.

   b. During the payment period, the Sub V Trustee shall make all payments of distributions to creditors from the Plan payments. Such remittances shall occur no less frequently than fifteen (15) days after the first day of each month following receipt of a Plan payment from the Reorganized Debtor (a "Dividend Payment") following finalization of claims objections. The Sub V Trustee shall make such distributions out from an account to be established by the Sub V Trustee at an institution on the approved U.S. Trustee depository list account, which shall be maintained by the Sub V Trustee for the duration of the payment period until Plan consummation following the final payment required under the Plan (the "Sub V Trustee Account").

   c. Disbursements to Allowed Claimants. As soon as is reasonably practicable after the Effective Date and following claims objections resolutions, the Sub V Trustee shall initiate disbursement of Plan payments from the Sub V Trustee Account, less amounts reserved for the Sub V Trustee's fees and expenses, to the holders of Allowed Claims on a pro rata basis based on the total amount of Allowed Claims. For the avoidance of doubt, the disbursement to holders of Allowed Claims will be reduced in an amount equal to the Sub V Trustee's fees and costs incurred as Sub V Trustee and allowed in accordance with subparagraph (k) herein. The Reorganized Debtor shall provide a list of claims, including Allowed Claims and disputed claims to the Sub V Trustee on or about the same time when funds are delivered directing the Sub V Trustee which claims are "allowed claims" entitled to distribution, which claims are unresolved requiring the Sub V Trustee to withhold funds as

required in subparagraph (e) herein and which claims constitute disallowed claims entitled to no distribution.

d. Addresses for Disbursements. Disbursements shall occur by check drawn on the Trustee Account and may be delivered by the Sub V Trustee to (i) the address for payment set forth on a proof of claim filed by the Holder or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to the Sub V Trustee at Michael G. Colvard, Martin & Drought, P.C., 112 East Pecan Street, Suite 1616, San Antonio, TX 78205, or (iii) if the Holder has not filed a proof of claim or otherwise provided the Trustee with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtors in this case. If any distribution to a Holder of an Allowed Unsecured Claim is returned to the Sub V Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the Sub V Trustee is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of the Sub V Trustee until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, the Sub V Trustee is unable to obtain the information necessary to deliver a distribution within six months following the return of the undeliverable distribution, the Sub V Trustee shall be authorized to treat such Holder's current and future claims as an Unclaimed Distribution (defined below).

e. No Fractional Disbursements. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions.

f. Time Bar to Cash Distributions. Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check issued by the Sub V Trustee on account of distribution. If a Holder fails to negotiate a disbursement check within this 120-day period, the Trustee shall have the right to void the check, and any current and future claims of such Holder to the Dividend shall be treated as an Unclaimed Distribution (defined below).

g. Unclaimed Distributions and Reversion. Any distribution made by the Sub V Trustee to a Holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of

address, cannot be made on account of such Holder's failure to comply with the Withholding Requirements set forth in subparagraph (e) above, or has not been negotiated within 120 days from the date of issuance on the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtors and held by the Sub V Trustee within the Sub V Trustee Account. The Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Unclaimed Distributions shall be distributed by the Sub V Trustee to the remaining Holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the Plan as if the Claim underlying such Unclaimed Distribution had been disallowed.

h. No Liability. Following entry of the Confirmation Order, any disbursements made by the Trustee on account of a Claim are deemed authorized disbursements, and the Sub V Trustee shall have no liability for these disbursements. The Sub V Trustee's obligations are limited to acting as the disbursement agent under the Plan, and the Sub V Trustee shall have no liability to any person in the event that the Reorganized Debtor fails to timely deliver payments to the Sub V Trustee, or otherwise fails to perform its obligations under the Plan. The Sub V Trustee shall have no obligation to disburse Dividend Payments unless and until he determines that there are adequate funds in the Sub V Trustee Account to cover a distribution to Holders, net of the Sub V Trustee's fees and costs. The Sub V Trustee shall not have any obligations to pursue and/or manage the Reorganized Debtors' pursuit of Causes of Action.

i. Reporting. The Sub V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Sub V Trustee shall file his final report and seek a discharge of his duties as Sub V Trustee.

j. Notices. The Sub V Trustee may limit notice of any and all reports, documents, pleadings or other filings related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Sub V Trustee shall be under no obligation to serve parties which

are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

k. Post-Confirmation Fees and Expenses of the Sub V Trustee. The Sub V Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Sub V Trustee under this paragraph from the Plan Payments by submitting a fee and expense statement to the Reorganized Debtors, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties"). The Sub V Trustee shall be compensated for his post-confirmation duties at his normal hourly rate and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the Reorganized Debtor to the Sub V Trustee. The Sub V Trustee's fees and expense shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the Sub V Trustee's fees and expenses disclosed therein. If no objection is received, the Sub V Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

l. Distributions by the Sub V Trustee on Disputed Claims. Except as otherwise provided in the Plan, no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Holder who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Unsecured Claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Sub V Trustee subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Sub V Trustee will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Sub V Trustee will make withheld funds available to allowed claim holders within the next payment period.

m. Additional Post-Confirmation Duties of the Sub V Trustee. In addition to the duties set forth above and as set forth under 11 U.S.C. § 1183, duties of the Trustee include those relating to:

   i. The right to appear and be heard in any post-confirmation hearing in relation to any issue arising within the post-confirmation affairs of the reorganized Debtor;

      ii.      Right to acquire required bonding, which costs are to be satisfied out of Debtor's Plan Payments under 11 U.S.C. § 1191(d);

      iii.     Right to take all steps necessary to ascertain allowed claim amounts, to prepare and issue claims recommendations and to obtain court determinations on amounts of allowed claims and distributions;

      iv.     Other matters reasonably necessary to ensure that the Plan Payments are made on a full and timely basis, and filing of a final report.

F.    Bankruptcy Code § 1186(a) requires all debtor's property to remain property of the estate until all plan payments have been made if a plan is confirmed under § 1191(b). The Plan does not account for § 1186(b), specifying that property of the estate does not vest unto Debtor until all payments are made, if a plan confirmed under § 1191(b) – and that all such property remains property of the estate until all Plan payments are made.

G.    The Plan contains no reporting requirements if a plan is confirmed under § 1191(b) –providing reasonable and necessary information to the post-confirmation Sub V Trustee/Distributing Agent regarding plan compliance requirements, i.e., monthly financial reports, bank statements and confirming Debtor's post-confirmation plan performances/compliances.

**PRAYER**

WHEREFORE PREMISES CONSIDERED, Sub V Trustee prays that the Court confirm the Plan subject to Plan modifications consistent with Sub V Trustee's recommendations and, for such other relief at law and equity to which Sub V Trustee may be justly entitled.

Respectfully Submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

By: /s/Michael G. Colvard
    Michael G. Colvard
    State Bar No. 04629200

**SUBCHAPTER V TRUSTEE**

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 20, 2021, a true and correct copy of the foregoing document was served electronically by the Court's Electronic Case Filing system, and by first-class U.S. Mail on the parties listed on the attached Service List.

/s/ Michael G. Colvard

Michael G. Colvard